OPINION
{¶ 1} Appellant, Annette Hayberg, appeals from the January 15, 2008 judgment entry of the Portage County Court of Common Pleas, granting the motion for summary *Page 2 
judgment of appellee, Robinson Memorial Hospital, and denying appellant's motion for summary or declaratory judgment against appellee.
 {¶ 2} On October 6, 2003, appellant, while riding as a passenger in a motor vehicle operated by her husband, Lewis Hayberg, was injured in an automobile accident proximately caused by his negligence.[1] Appellant was treated by appellee as a result of her injuries. At the time of the accident, appellant, as a result of her husband's employment with General Motors, was an enrollee of the General Motors Health Plan ("Plan"). Anthem Blue Cross and Blue Shield ("Anthem") was the third-party administrator of the Plan.
 {¶ 3} After treating appellant, appellee, on appellant's behalf, submitted the bills to the Plan. Those bills were paid at a discounted rate of $11,295.39 in November of 2003. Around the same time of that payment, appellee learned from appellant that the medical bills would ultimately be the responsibility of Nationwide, due to the negligence of appellant's husband. Appellee then submitted those same medical bills to Nationwide.
 {¶ 4} Nationwide paid appellee $13,861.45, the exact amount of the medical bills incurred by appellant, in December of 2003. Appellee ultimately refunded the Plan. According to the deposition testimony of Linda Suzanne Evitts, a supervisor of cash posting with appellee, she made a mistake in not timely processing the refund to the Plan. *Page 3 
 {¶ 5} On September 28, 2006, appellant filed a complaint for declaratory judgment (count one), violation of statutory law (counts two and six), fraud (counts three and seven), conversion (counts four and eight), and unjust enrichment (counts five and nine), against appellee and defendant Physicians Emergency Service, Incorporated.[2] Appellee filed an answer on November 20, 2006.[3]
 {¶ 6} On July 12, 2007, appellee filed a motion for summary judgment pursuant to Civ. R. 56. On September 24, 2007, appellant filed a memorandum in opposition to appellee's motion for summary judgment and a cross-motion for summary judgment or in the alternative declaratory judgment. On October 3, 2007, appellee filed a reply brief in support of its motion for summary judgment.
 {¶ 7} Pursuant to its January 15, 2008 judgment entry, the trial court granted appellee's motion for summary judgment and denied appellant's motion for summary or declaratory judgment. It is from that judgment that appellant filed a timely notice of appeal and makes the following assignments of error:
 {¶ 8} "[1.] The trial court erred to the prejudice of [appellant] in granting [appellee's] motion for summary judgment and denying [appellant's] cross-motion for declaratory and summary judgment under Counts One and Six of the Complaint.
 {¶ 9} "[2.] The trial court erred to the prejudice of [appellant] in granting [appellee's] motion for summary judgment and denying [appellant's] cross-motion for summary judgment under Count Seven of the Complaint. *Page 4 
 {¶ 10} "[3.] The trial court erred to the prejudice of [appellant] in granting [appellee's] motion for summary judgment and denying [appellant's] cross-motion for summary judgment under Count Eight of the Complaint.
 {¶ 11} "[4.] The trial court erred to the prejudice of [appellant] in granting [appellee's] motion for summary judgment and denying [appellant's] cross-motion for summary judgment under Count Nine of the Complaint."
 {¶ 12} In each of appellant's four assignments of error, she asserts that the trial court erred in granting appellee's motion for summary judgment and denying her cross-motion for summary judgment.
 {¶ 13} "This court reviews de novo a trial court's order granting summary judgment." Hudspath v. Cafaro Co., 11th Dist. No. 2004-A-0073,2005-Ohio-6911, at ¶ 8, citing Hapgood v. Conrad, 11th Dist. No. 2000-T-0058, 2002-Ohio-3363, at ¶ 13. "`A reviewing court will apply the same standard a trial court is required to apply, which is to determine whether any genuine issues of material fact exist and whether the moving party is entitled to judgment as a matter of law.'" Id.
 {¶ 14} "Since summary judgment denies the party his or her `day in court' it is not to be viewed lightly as docket control or as a `little trial.' The jurisprudence of summary judgment standards has placed burdens on both the moving and the nonmoving party. In Dresher v.Burt [(1996), 75 Ohio St.3d 280, 296], the Supreme Court of Ohio held that the moving party seeking summary judgment bears the initial burden of informing the trial court of the basis for the motion and identifying those portions of the record before the trial court that demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim. The evidence must be in the record or *Page 5 
the motion cannot succeed. The moving party cannot discharge its initial burden under Civ. R. 56 simply by making a conclusory assertion that the nonmoving party has no evidence to prove its case but must be able to specifically point to some evidence of the type listed in Civ. R. 56(C) that affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claims. If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied. If the moving party has satisfied its initial burden, the nonmoving party has a reciprocal burden outlined in the last sentence of Civ. R. 56(E) to set forth specific facts showing there is a genuine issue for trial. If the nonmoving party fails to do so, summary judgment, if appropriate shall be entered against the nonmoving party based on the principles that have been firmly established in Ohio for quite some time in Mitseff v. Wheeler (1988), 38 Ohio St.3d 112, * * *."Welch v. Ziccarelli, 11th Dist. No. 2006-L-229, 2007-Ohio-4374, at ¶ 40. (Parallel citation omitted.)
 {¶ 15} "The court in Dresher went on to say that paragraph three of the syllabus in Wing v. Anchor Media, Ltd. of Texas (1991),59 Ohio St.3d 108, * * * is too broad and fails to account for the burden Civ. R. 56 places upon a moving party. The court, therefore, limited paragraph three of the syllabus in Wing to bring it into conformity withMitseff. (Emphasis added.)" Id. at ¶ 41. (Parallel citations omitted.) (Emphasis sic.)
 {¶ 16} The Supreme Court in Dresher went on to hold that whenneither the moving nor nonmoving party provides evidentiary materials demonstrating that there are no material facts in dispute, the moving party is not entitled a judgment as a matter of law as the moving party bears the initial responsibility of informing the trial court of the basis for the motion, `and identifying those portions of the record which demonstrate the *Page 6 
absence of a genuine issue of fact on a material element of the nonmoving party's claim.' Id. at 276. (Emphasis added.)" Id. at ¶ 42. (Emphasis sic.)
 {¶ 17} In her first assignment of error, appellant argues that the trial court erred in granting appellee's motion for summary judgment and denying her cross-motion for declaratory and summary judgment under counts one and six of the complaint. Under her first assignment of error, she presents two issues for our review: (1) since appellee was under contract with Anthem, it was prohibited from seeking compensation from appellant in excess of the contracted rates plus approved co-payments and deductibles; and (2) appellee violated R.C. 1751.60 by seeking and retaining compensation in excess of the contracted rates plus approved co-payments and deductibles under the contract with Anthem.
 {¶ 18} Because appellant's issues are interrelated, we will address them together.
 {¶ 19} "A trial court has broad discretion in deciding whether to entertain a declaratory judgment." Sekora v. General Motors Corp.
(1989), 61 Ohio App.3d 105, 110. "`In order to obtain declaratory relief, (a) plaintiff must establish (1) a real controversy between the parties, (2) a justiciable controversy, and (3) that speedy relief is necessary to preserve the rights of the parties. (* * *) * * *.' CafaroLeasing Co, Ltd. v. K-M I Assoc., 11th Dist. No. 2006-T-0115,2007-Ohio-6723, at ¶ 27. (Citations omitted.)
 {¶ 20} R.C. 1751.60(A) provides: "Except as provided for in divisions (E) and (F) of this section, every provider or health care facility that contracts with a health insuring corporation to provide health care services to the health insuring corporation's enrollees or subscribers shall seek compensation for covered services solely from the health *Page 7 
insuring corporation and not, under any circumstances, from the enrollees or subscribers, except for approved copayments and deductibles."
 {¶ 21} R.C. 1751.01 (K) states: "`Enrollee' means any natural person who is entitled to receive health care benefits provided by a health insuring corporation."
 {¶ 22} R.C. 1751.01(M) provides: "`Health care facility' means any facility, except a health care practitioner's office, that provides preventive, diagnostic, therapeutic, acute convalescent, rehabilitation, mental health, mental retardation, intermediate care, or skilled nursing services."
 {¶ 23} R.C. 1751.01(P) states: "`Health insuring corporation' means a corporation, as defined in division (I) of this section, that, pursuant to a policy, contract, certificate, or agreement, pays for, reimburses, or provides, delivers, arranges for, or otherwise makes available, basic health care services, supplemental health care services, or specialty health care services, or a combination of basic health care services and either supplemental health care services or specialty health care services, through either an open panel plan or a closed panel plan."
 {¶ 24} In the case at bar, appellant is an "enrollee" of Anthem's Plan as defined under R.C. 1751.01(K). Appellee is a "health care facility" pursuant to R.C. 1751.01(M). Also, Anthem is a "health insuring corporation" as defined under R.C. 1751.01(P).
 {¶ 25} The clear legislative purpose of R.C. 1751.60 is to make sure that individuals who are covered under health plans realize the benefit of those plans and are not forced to pay any amounts in excess of the co-payments and deductibles they are required to pay under the contracts between health care facilities and the health insuring corporations who negotiate the discounts and write-offs on their behalf. In *Page 8 
addition, R.C. 1751.60 protects the health insuring corporations who negotiate the adjustments and discounts through third party administrators like Anthem in the instant matter.
 {¶ 26} Again, Nationwide paid appellee $13,861.45, the exact amount of the medical bills incurred by appellant, in December of 2003. Appellee ultimately refunded Anthem $11,295.39. Anthem paid appellant's medical bills in compliance with the contract. Here, appellee billed and accepted $2,566.06 more than it was entitled to from Nationwide in violation of R.C. 1751.60. Under the statute, appellee was required to seek compensation for covered services solely from Anthem and was only permitted to seek approved co-payments and deductibles (which in this case was nothing) from Nationwide.
 {¶ 27} Accordingly, the trial court erred by granting appellee's motion for summary judgment, and denying appellant's motion for declaratory and summary judgment under counts one and six of the complaint.
 {¶ 28} Appellant's first assignment of error is with merit.
 {¶ 29} In her second assignment of error, appellant alleges that the trial court erred in granting appellee's motion for summary judgment and denying her cross-motion for summary judgment under count seven of the complaint.
 {¶ 30} In her third assignment of error, appellant contends that the trial court erred in granting appellee's motion for summary judgment and denying her cross-motion for summary judgment under count eight of the complaint. *Page 9 
 {¶ 31} In her fourth assignment of error, appellant maintains that the trial court erred in granting appellee's motion for summary judgment and denying her cross-motion for summary judgment under count nine of the complaint.
 {¶ 32} Because appellant's second, third, and fourth assignments of error are interrelated, we will address them in a consolidated fashion.
 {¶ 33} Preliminarily, we note that appellee argues that appellant's claims are preempted by ERISA because the claims somehow "relate to" the Plan's subrogation rights. However, appellant's claims against appellee in billing both Nationwide and Anthem for the same services and billing Nationwide for more than appellant's approved co-payments and deductibles in compliance with R.C. 1751.60 in no way "relates to" the Plan's subrogation rights. This case is not preempted by ERISA.
 {¶ 34} "In Ohio, fraud requires a claimant to demonstrate an injury proximately caused by the claimant's justifiable reliance upon another's false representation." Wisen v. Wisen, 11th Dist. No. 2004-L-181,2005-Ohio-6898, at ¶ 18.
 {¶ 35} R.C. 2913.47(B), which deals with insurance fraud, provides:
 {¶ 36} "No person, with purpose to defraud or knowing that the person is facilitating a fraud, shall do either of the following:
 {¶ 37} "(1) Present to, or cause to be presented to, an insurer any written or oral statement that is part of, or in support of, an application for insurance, a claim for payment pursuant to a policy, or a claim for any other benefit pursuant to a policy, knowing that the statement, or any part of the statement, is false or deceptive;
 {¶ 38} "(2) Assist, aid, abet, solicit, procure, or conspire with another to prepare or make any written or oral statement that is intended to be presented to an insurer as *Page 10 
part of, or in support of, an application for insurance, a claim for payment pursuant to a policy, or a claim for any other benefit pursuant to a policy, knowing that the statement, or any part of the statement, is false or deceptive."
 {¶ 39} The tort of conversion involves any exercise of control wrongfully exerted over the personal property (including money) of another inconsistent with or in denial of that party's rights. Rider v. Rider (Mar. 31, 2000), 11th Dist. No. 98-T-0202, 2000 Ohio App. LEXIS 1429, at 7-8.
 {¶ 40} "Unjust enrichment is derived from the equitable principal that no person ought to retain a benefit which, if retained by him or her, would result in inequity and injustice." Girard v. Leatherworks Partnership, 11th Dist. No. 2004-T-0010, 2005-Ohio-4779, at ¶ 41, citing Hambleton v. R.G. Barry Corp. (1984), 12 Ohio St.3d 179, 183.
 {¶ 41} In the case at bar, appellee committed fraud by seeking and retaining compensation in excess of the contracted rates plus approved co-payments and deductibles under the contract with Anthem. There is an issue of material fact as to whether appellee defrauded the $2,566.06 from appellant by intentionally reducing the amount available to appellant under Nationwide's liability policy. The record establishes that appellee knowingly concealed material facts which it had a duty to disclose.
 {¶ 42} Again, Anthem paid appellee $11,295.39 in full payment of the $13,861.45 appellee submitted to Anthem for payment. Based upon the record, it appears appellant was not responsible for any further payment to appellee for approved co-payments and deductibles under the contract. Despite the fact the appellant did not owe appellee anything, appellee still billed Nationwide $13,861.45 for the same services. Also, it is doubtful that appellee would have refunded the money to Anthem if *Page 11 
this lawsuit had not been filed. Appellant's injury was proximately caused by Nationwide's and Anthem's reliance on the concealments.
 {¶ 43} In addition, there is a question of fact whether appellee converted money from appellant by seeking and retaining compensation in excess of the contracted rates plus approved co-payments and deductibles under the contract with Anthem. Appellee intentionally collected $2,566.06 more than it would have received under the contract after applying the write-offs and refunding Anthem its subrogated payment out of the monies it received from Nationwide. Thus, appellee converted the $2,566.06 from appellant by intentionally reducing the amount available to appellant under Nationwide's liability policy.
 {¶ 44} Further, appellee was unjustly enriched by seeking and retaining compensation in excess of the contracted rates plus approved co-payments and deductibles under the contract with Anthem. By accepting the $13,861.45 from Nationwide knowing that appellant was not responsible for any further payment to appellee for co-payments and deductibles under the contract, appellee intentionally collected $2,566.06 more than it would have received under the contract after applying the write-offs and refunding Anthem its subrogated payment out of the monies it received from Nationwide. Thus, appellee was unjustly enriched by the $2,566.06 appellant was entitled to under Nationwide's liability policy.
 {¶ 45} Clearly, a jury question exists as to whether appellee is engaged in the practice of double billing and keeping additional monies. *Page 12 
 {¶ 46} The trial court erred by granting appellee's motion for summary judgment, and denying appellant's motion for summary judgment under counts seven, eight, and nine of the complaint.
 {¶ 47} Appellant's second, third, and fourth assignments of error are with merit.
 {¶ 48} For the foregoing reasons, appellant's assignments of error are well-taken. The judgment of the Portage County Court of Common Pleas is reversed and the matter is remanded for further proceedings consistent with this opinion. It is ordered that appellee is assessed costs herein taxed. The court finds there were reasonable grounds for this appeal.
TIMOTHY P. CANNON, J., concurs in judgment only,
DIANE V. GRENDELL, P.J., dissents with a Dissenting Opinion.
[1] Appellant filed a lawsuit against her husband in the Summit County Court of Common Pleas in January of 2005. That case was settled in June of 2006. As part of that settlement, the insurance carrier for appellant's husband, Nationwide Insurance Company ("Nationwide"), paid various medical providers more than $32,000 for expenses incurred by appellant.
[2] Defendant Physicians Emergency Service, Incorporated was voluntarily dismissed on April 26, 2007, and is not a named party to the instant appeal.
[3] Appellee filed an amended answer on July 6, 2007.