[Cite as *Hayberg v. Robinson Mem. Hosp. Found.*, 2013-Ohio-2828.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# PORTAGE COUNTY, OHIO

| | | |
|---|---|---|
| ANNETTE HAYBERG, | : | **O P I N I O N** |
| Plaintiff-Appellant, | : | |
| - vs - | : | CASE NO. 2012-P-0015 |
| ROBINSON MEMORIAL HOSPITAL FOUNDATION d.b.a. ROBINSON MEMORIAL HOSPITAL, | : | |
| Defendant-Appellee. | : | |

Civil Appeal from the Portage County Court of Common Pleas, Case No. 2010 CV 0647.

Judgment: Affirmed.

*Timothy H. Hanna,* 388 South Main Street, Suite 402, Akron, OH 44311, and *James Campbell,* Campbell Law Office, 2717 Manchester Road, Akron, OH 44319 (For Plaintiff-Appellant).

*Paul L. Jackson* and *Karen D. Adinolfi,* Roetzel & Andress, L.P.A., 222 South Main Street, Akron, OH 44308 (For Defendant-Appellee).

THOMAS R. WRIGHT, J.

{¶1} This appeal is from a final judgment of the Portage County Court of Common Pleas. Appellant, Annette Hayberg, challenges the merits of two discovery orders and the trial court's final decision granting summary judgment in favor of appellee, Robinson Memorial Hospital, on all pending claims. As to the summary judgment determination, appellant contends that the trial court erred in not concluding

that the outcome of the underlying litigation was controlled by a prior opinion of this court concerning the merits of her claims.

{¶2} In October 2003, appellant was a passenger in a motor vehicle involved in a traffic accident. Appellant's husband, Lewis Hayberg, was the driver of the vehicle when the accident occurred, and his negligence caused the accident. Shortly afterward, appellant was taken to appellee hospital where she was treated for injuries.

{¶3} The Hayberg vehicle was insured pursuant to an automobile liability policy issued by Nationwide Insurance Company ("Nationwide"). In addition, since her husband was employed by General Motors Corporation, appellant was covered under the self-funded GM health insurance plan ("GM plan"). Anthem Blue Cross and Blue Shield ("Anthem") acted as the third-party administrator of the health plan.

{¶4} The total bill for appellant's treatment at appellee hospital was $13,861.45. Almost immediately after rendering the services, appellee sought payment from Anthem under the GM plan for the amount of $11,295.39. The reason for the difference between the two figures was due to the terms of a contract between appellee and the GM plan. This contract provided that when an insured under the GM plan was treated at the hospital, appellee would deduct certain "write-offs" from the total bill. As a result, Anthem would only be billed for 89 percent of the actual charges.

{¶5} In November 2003, Anthem paid appellee's bill for appellant's treatment. Approximately one month later, appellee was informed that, due to her husband's negligence, Nationwide would ultimately be liable for medical charges under the automobile policy. Consequently, in December 2003, appellee sent a separate bill to Nationwide for the entire amount owed for the hospital services. Upon reviewing the

2

matter, Nationwide paid appellee the entire sum of 13,861.45, $2,566.06 more than what Anthem had paid. Although there was a considerable delay, ultimately appellee reimbursed Anthem the entire sum it originally paid.

{¶6} In January 2005, appellant filed a negligence action against her husband in the Summit County Court of Common Pleas. Nationwide settled for $100,000, the policy limits. Because Nationwide already paid $32,574.06 for appellant's medical treatment and bills, its final payment to her was for $67,425.94. Of the $32,574.06 Nationwide deducted from the $100,000 limit, $2,566.06 was for the additional charges it paid for the hospital services, in comparison to Anthem for the GM plan.

{¶7} In September 2006, appellant initiated her first legal action against appellee hospital, essentially seeking to recover the additional amount Nationwide paid. In one claim, appellant asserted that she was entitled to recovery because appellee's billing practices violated R.C. 1751.60(A). In the remaining aspects of the complaint, she raised claims sounding in declaratory judgment, conversion, fraud, and unjust enrichment.

{¶8} After the first action pended for approximately nine months, the parties submitted competing motions for summary judgment. In January 2008, the trial court issued a final order granting summary judgment in favor of appellee on all pending claims. Appellant then pursued a direct appeal to this court.

{¶9} In *Hayberg v. Physicians Emergency Service, Inc.*, 11th Dist. No. 2008-P-0010, 2008-Ohio-6180, a majority of this court reversed the summary judgment ruling and remanded the case to the trial court for further proceeding. Regarding appellant's claim under R.C. 1751.60(A), our lead opinion concluded that the statute did not permit

3

appellee to collect from Nationwide a greater amount than what it was entitled to receive under its contract with the GM plan. As to the other four claims, the lead opinion further held that appellant's evidentiary materials had been sufficient to raise issues of material fact pertaining to whether she was entitled to recover the funds for the additional charges.

{¶10} Upon remand, appellant was granted leave to voluntarily dismiss her first action against appellee. In April 2010, she instituted a new proceeding for recovery of the $2,556.06 and other damages. Although appellant named other parties as defendants in her original action, appellee hospital was the sole defendant named in the amended complaint of her second action. The second action was based upon the same allegations as appellant's original case, and she asserted the same five claims for relief. The only differences between the two cases was that appellant now included a breach of contract claim against appellee, and made allegations concerning the need to certify the new proceeding as a class action.

{¶11} As the second action went forward, appellant made at least two requests to compel appellee to provide proper responses to certain interrogatories. Essentially, she sought information concerning other patients of the hospital whose accounts may have been treated in the same manner as her account. As part of her second request, she moved the trial court for a protective order, under which appellee would be required to provide the requested information after redacting any references to the actual identity of the patients. The trial court denied appellant's requests.

{¶12} While the second action was pending, the Supreme Court of Ohio issued its decision in *King v. ProMedica Health System, Inc.*, 129 Ohio St.3d 596, 2011-Ohio-

4200, addressing the proper application of R.C. 1751.60(A). In light of the express holding in *King*, appellee submitted a second motion for summary judgment as to all six claims in appellant's amended complaint. Specifically, appellee maintained that the *King* decision had the effect of overruling this court's prior holding as to the viability of appellant's claim under that statute. The hospital further maintained that the trial court was no longer bound to follow our earlier decision under the law-of-the-case doctrine. Finally, regarding appellant's remaining claims for relief, appellee asserted that summary judgment was appropriate because each of the claims was predicated upon the alleged violation of R.C. 1751.60(A).

{¶13} After appellant responded to appellee's new motion and submitted her own new motion for summary judgment, the trial court released its final order granting appellee's motion on all six pending claims. In addition to holding that the *King* decision was controlling over our original opinion, the trial court agreed with appellee's argument as to the disposition of the other claims.

{¶14} In again appealing to this court, appellant has raised two assignments of error for our review:

{¶15} "[1.] The trial court committed prejudicial error in granting [appellee's] motion for summary judgment based upon its opinion that the Supreme Court's decision in *King v. ProMedica Health System, Inc.*, 129 Ohio St.3d 596, 2011-Ohio-4200, 955 N.E.2d 348, was an 'intervening' event that created an exception to the applicability of the law-of-the-case and *res judicata* under this court's prior decision in *Hayberg v. Physicians Emergency Service, Inc.*, 11th Dist. No. 2008-P-0010, 2008-Ohio-6180.

{¶16} "[2.] The trial court committed prejudicial error in denying [appellant's]

5

motions to compel based upon its opinion that the requested documents were privileged under HIPAA."

{¶17} Under her first assignment, appellant contests the merits of the trial court's analysis concerning the continuing viability of this court's holding in her original appeal before us. *See Hayberg*, *supra*, 2008-Ohio-6180. According to appellant, the trial court should have concluded that our prior ruling was still binding under the law-of-the-case doctrine because the legal issue addressed in our opinion was readily distinguishable from the issue considered by the Supreme Court in *King*. Based upon this, she argues that the trial court should have followed our analysis of R.C. 1751.60(A) in disposing of appellee's second motion for summary judgment.

{¶18} As previously noted, the focus of this court's discussion in appellant's first appeal was the viability of her claim under R.C. 1751.60(A). That statute delineates the manner in which a health care provider can obtain payment for its services, and states as follows:

{¶19} "Except as provided for in divisions (E) and (F) of this section, every provider or health care facility that contracts with a health insuring corporation to provide health care services to the health insuring corporation's enrollees or subscribers shall seek compensation for covered services solely from the health insuring corporation and not, under any circumstances, from the enrollees or subscribers, except for approved copayments and deductibles."

{¶20} In both appeals to this court, appellant asserts that appellee violated the foregoing statutory provision by obtaining a greater payment for its services from Nationwide, the automobile insurer, than it did from the GM plan, the "health" insurer.

6

Appellant's position is that, by seeking $2,566.06 more from Nationwide, and thereby reducing the total sum she could receive in her settlement, appellee essentially was taking payments for its services directly from her. In our first opinion in this matter, this court adopted appellant's position, expressly holding that appellee was not entitled under R.C. 1751.60(A) to collect an amount greater than what it could obtain through its contract with the GM plan. *Hayberg*, 2008-Ohio-6180, at ¶26.

{¶21} According to appellee and the trial court, the analysis of the lead opinion in the first *Hayberg* appeal has been rejected by the Supreme Court of Ohio. In *King*, 2011-Ohio-4200, the plaintiff was treated at a local hospital after being involved in a traffic accident. During her hospital stay, the plaintiff informed the staff that she had health insurance with Aetna Health. Nevertheless, in seeking payment for its services, the hospital only sent a bill to the plaintiff's automobile carrier, Safeco. Based upon this, the plaintiff brought an action against the hospital, in which each of her four claims was predicated upon an alleged violation of R.C. 1751.60(A). Specifically, the *King* plaintiff alleged that the hospital was required under the statute to seek payment solely from the health insurer, not the automobile insurer.

{¶22} After the appellate court in *King* reversed the trial court's dismissal of the plaintiff's entire complaint, the Ohio Supreme Court reinstated the trial court's ruling. In the first portion of its analysis, the *King* court quoted R.C. 1751.60(A) in its entirety, and then concluded that the purpose of the statute was clear from its wording:

{¶23} "By its express terms, R.C. 1751.60(A) governs providers or health-care facilities, health-insuring corporations and a health-insuring corporation's insured. The statute is applicable only when there is a contract between a provider and a health-

7

insuring corporation, and the provider seeks compensation for services rendered. The legislature expressed its intent that the provider must seek compensation solely from the health-insuring corporation and not from the insured." *Id.* at ¶9.

{¶24} Applying the foregoing discussion to the facts of that case, the *King* court held that R.C. 1751.60(A) had not been violated because the hospital never sought payment directly from the plaintiff. *Id.* at ¶10. In the second part of its analysis, the *King* court proceeded to address the plaintiff's contention that the statute had to be interpreted to obligate the hospital to never seek payment from the automobile insurer. In support of that point, the *King* plaintiff emphasized that the statute expressly indicated that payment for the provider's services could "solely" be sought from the health insurer. In rejecting this argument, the Supreme Court stated:

{¶25} "R.C. 1751.60(A) has limited application. The statute addresses the contract between a provider and a health-insuring corporation. No other entities are mentioned in the statute. The statutory language allowing a provider to recover 'solely from the health insuring corporation and not, under any circumstances, from the enrollees or subscribers' relates only to this contractual relationship. Here, the term 'solely' does not have the meaning given to it by the [appellate court]. Reading the word in this manner would impermissibly render the phrase 'and not, under any circumstances, from the enrollees or subscribers' superfluous. Rather, the word 'solely' is part of a phrase that defines the context of the statute; it means, in this context, to the exclusion of a health-insuring corporation's insured. This reading gives full meaning to every word of the statute. Read in context, the statute's language allowing a provider to seek compensation from the health-insuring corporation and not the insured is limited to

8

the situation in which a health-care services contract is in place between a provider and a health-insuring corporation. Therefore, we hold that R.C. 1751.60(A) applies only when a provider seeks payment from a health-insuring corporation's insured with which the provider has entered into a contract." *Id.* at ¶12.

{¶26} In attempting to distinguish the *King* decision from our holding in her first appeal, appellant submits that *King* only stands for the proposition that R.C. 1751.60(A) does not forbid a health-care provider from seeking payment for medical services from an insurer other than the health insurer. Appellant further submits that the *King* opinion never addressed the issue of whether that statute places a limit upon the amount that a health-care provider can obtain from an automobile insurer. According to appellant, our first opinion in this matter concluded that R.C. 1751.60(A) mandates that the amount the hospital can collect from the automobile insurer is limited to the sum which the health insurer would be required to pay under its separate contract with the hospital.

{¶27} Even if it is assumed that appellant has properly construed the holding in our original opinion, her attempt to distinguish the *King* holding is unpersuasive. As to this point, the *King* court emphasized that R.C. 1751.60(A) only refers to health-care providers and health insurers; the statute does not contain any reference to automobile insurers or other types of insurers. As a result, the provision has no application to an automobile insurer *in any respect*. In other words, R.C. 1751.60(A) is not controlling as to the amount which a hospital can seek to recovery from an insurer other than the health insurer.

{¶28} Appellant also attempts to distinguish our first opinion on the grounds that, unlike the *King* plaintiff, she was essentially required to pay compensation to appellee

9

hospital. Again, she indicates that, since her husband's automobile carrier was billed an extra $2,566.06, she was deprived of that sum in her final settlement. However, this point is irrelevant under the *King* analysis. According to the Supreme Court, R.C. 1751.60(A) only applies when there is a contractual relationship between the hospital and the insurer. Under the undisputed facts of this case, the only contractual relationship was between appellee and the GM plan. Since no contract existed between appellee and Nationwide, the statute is simply inapplicable to appellee's separate request for payment from Nationwide.

{¶29} To the extent that the *King* opinion held that R.C.1751.60(A) has no effect upon a health-care provider's ability to obtain compensation for medical charges from an automobile insurer, it directly conflicted with our holding in appellant's original direct appeal. Thus, the question becomes whether the trial court was still obligated to follow our precedent in ruling upon appellee's second motion for summary judgment.

{¶30} Under the law-of-the-case doctrine, a prior decision of a reviewing court is to remain binding upon both the trial and appellate court in all ensuing proceedings in the case. *Weller v. Weller*, 11th Dist. No. 2004-G-2599, 2005-Ohio-6892, ¶15, quoting *Nolan v. Nolan*, 11 Ohio St.3d 1, 3-4 (1984). Generally, the doctrine does not allow the trial court to alter the appellate mandate in any respect. *Id*. However, an exception to the application of the doctrine exists. A trial court is not required to follow the prior appellate holding when there has been an intervening decision from the Supreme Court of Ohio. *See Hopkins v. Dyer*, 104 Ohio St.3d 461, 2004-Ohio-6769.

{¶31} As to our case, the Supreme Court's *King* opinion is an intervening decision rejecting our prior holding in this case as to the proper application of R.C.

10

1751.60(A).  Therefore, the trial court was no longer bound by our prior ruling, and was required to apply *King.*  Pursuant to *King*, appellee is entitled to summary judgment on appellant's declaratory judgment claim and her claim under R.C. 1751.60(A).

**{¶32}**  Regarding appellant's remaining four claims, the trial court concluded that summary judgment was likewise appropriate because each of those claims were based upon the underlying assertion that R.C. 1751.60(A) was violated.  As to this aspect of the trial court's decision, in setting forth her factual allegations for her four remaining claims in her amended complaint, appellant did not make any references to the statute.  Nevertheless, upon reviewing the assertions upon which the claims were based, we hold that appellee was entitled to prevail on the four claims.

**{¶33}**  Before both the trial court and this court, appellant asserts that when appellee billed her husband's automobile insurer for the medical services, it could not seek payment for more than what it was entitled to receive pursuant to its contract with the health insurer, the GM plan.  In other words, it is appellant's position that, even when appellee was dealing with the automobile insurer, it was still bound to only recover the amount which was allowed under the contract between her healthcare provider and appellee.

**{¶34}**  By predicating her four remaining claims solely upon the existence of the contract between appellee and the GM plan, it is evident that appellant assumed that she is a proper party to enforce the contract for her benefit.  However, appellant was not a party to the appellee/the GM plan contract.  Accordingly, appellant can enforce appellee's contract with the GM plan only if she is an intended third-party beneficiary of that contract.  *See Huntington National Bank v. Val Homes, Inc.*, 11th Dist. No. 2011-G-

11

3021, 2012-Ohio-526, ¶37.

{¶35} "'(1) Unless otherwise agreed between promisor and promisee, a beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and either.

{¶36} "'(a) the performance of the promise will satisfy an obligation of the promisee to pay money to the beneficiary; or

{¶37} "'(b) the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.

{¶38} "'(2) An incidental beneficiary is a beneficiary who is not an intended beneficiary.'" *Hill v. Sonitrol of Southwestern Ohio, Inc.,* 36 Ohio St.3d 36, 40 (1988), quoting Restatement of the Law 2d, Contracts (1981), Section 302, 439-440.

{¶39} In the present case, appellant failed to submit any evidentiary materials showing that, in executing the underlying contract, appellee and the GM plan specifically agreed that appellant would be a third-party beneficiary. Furthermore, Anthem's payment of a discounted amount for services rendered by the hospital does not directly satisfy any separate obligation the GM plan owes to appellant; i.e., Anthem's only duty to her is to pay a sum to appellee. Additionally, the circumstances surrounding the execution of the contract does not indicate that the GM plan intended for appellant to receive any benefit from the reduced payment provision.

{¶40} Because appellant is an incidental beneficiary, she did not have enforceable rights from the contract between appellee and the GM plan, and appellee was not required to bill the automobile insurer the same amount as it would Anthem.

12

{¶41} Given that appellant did not have any enforceable contractual rights as to appellee, appellee did not breach the contract between the GM plan and appellee when it billed the automobile insurer, Nationwide, for the entire sum owed for its services. Moreover, appellee did not deprive appellant of any funds belonging to her, and its subsequent receipt of the additional $2,566.06 was not unjust or the result of fraudulent behavior. Thus, appellant cannot satisfy the elements of breach of contract, conversion, unjust enrichment, or fraud.

{¶42} As part of our disposition of the first appeal for this case, the lead opinion had a separate analysis as to the merits of the fraud, conversion, and unjust enrichment claims. Furthermore, this separate analysis was not overturned by the Supreme Court's holding in *King*. Nevertheless, that analysis was not embraced by the other judges. Hence, the lead opinion's prior analysis was not binding on the trial court or this court.

{¶43} Pursuant to the foregoing, this court concludes that there are no genuine disputes regarding any of the material facts of this case, and that appellee is entitled to judgment as a matter of law on all six claims in appellant's amended complaint. Appellant's first assignment is without merit.

{¶44} Under her second assignment, appellant challenges the trial court's denial of her two requests to compel appellee to provide information concerning other hospital patients who may have been subject to the same billing practices that formed the basis of her six claims. Appellant asserts that the trial court erred in holding that the patient information she sought was privileged.

{¶45} The information sought regarding other hospital patients would have only been relevant to the decision of whether the case should be certified as a class action

13

under Civ.R. 23. Given our holding under the first assignment, even if appellant had found that other patients had been treated in the same manner as her, none of the other patients would have been able to state viable claims due to R.C. 1751.60(A) and *King*. Thus, even if it is assumed that the requested information is not privileged, any error would be harmless. Accordingly, her second assignment of error is likewise without merit.

{¶46} Pursuant to the foregoing, neither assignment has merit. Thus, it is the order of this court that the judgment of the Portage County Court of Common Pleas is affirmed.

DIANE V. GRENDELL, J., concurs in judgment only, with a Concurring Opinion.
TIMOTHY P. CANNON, P.J., dissents with a Dissenting Opinion.

_____

DIANE V. GRENDELL, J., concurs in judgment only, with a Concurring Opinion.

{¶47} I concur in the judgment and analysis of this court, finding *King v. Promedica Health Sys., Inc.*, 129 Ohio St.3d 596, 2011-Ohio-4200, to be applicable and holding that summary judgment was appropriate as to appellant, Annette Hayberg's, claim for a violation of R.C. 1751.60. While I also concur that the trial court's grant of summary judgment should be affirmed, as to the remaining counts, my analysis as to these issues differs.

{¶48} In *Hayberg v. Physicians Emergency Servs., Inc.*, 11th Dist. No. 2008-P-0010, 2008-Ohio-6180, a prior appeal in this same matter, in my dissenting opinion, I

14

found that R.C. 1751.60 did not prevent the hospital from receiving payment from the automobile insurer, since it did not stand in the shoes of the insured, Hayberg. Similar analysis was employed by the Ohio Supreme Court in its subsequent holding in *King*. The Supreme Court held that a hospital did not violate R.C. 1751.60 by seeking payment for medical services from the insured's automobile insurance provider, due to the fact that the statute applies only to health-care insurance providers and subscribers. Since the insured herself was not billed by the hospital, no violation of R.C. 1751.60 occurred. *King* at ¶ 14. This is the analysis applied by the majority in the present case. Given my prior position and the Supreme Court's holding, I believe the majority's decision is proper as to the statutory violation claim.

{¶49} On this point, the dissenting judge's main contention in this case is that Nationwide's payment to Robinson Memorial essentially forced Hayberg to pay the amount billed to Nationwide, since this money was subtracted from her settlement proceeds. While this may be the effect of the holding in this case, it cannot change the conclusion that R.C. 1751.60 applies only when billing a health-care insurance provider or subscriber. Hayberg was not billed in this matter. Nationwide represents a third party's interests in these proceedings and does not stand in the shoes of Hayberg.

{¶50} Properly construed, R.C. 1751.60 prohibits Robinson Memorial from seeking compensation from Hayberg. It does not prevent the hospital from receiving payment from a third party willing to assume liability for the debt. Assuming, arguendo, that Robinson Memorial was limited to only receiving payment from Anthem, then Nationwide, not Hayberg, would have a potential claim under statute.

{¶51} While the dissenting judge also argues that *King* is distinguishable, the

15

*King* court rejected the same argument that is raised by Hayberg: since the health insurance benefits provided by the automobile insurer were an asset to her, she was essentially billed when Nationwide paid Robinson Memorial. *King*, 129 Ohio St.3d 596, 2011-Ohio-4200, at ¶ 10. As was held in *King*, the fact that the benefits were an asset to Hayberg does not mean that the request for payment from those assets from Nationwide qualified as a request for compensation from the insured as prohibited by R.C. 1751.60.

**{¶52}** As to the remaining claims, the writing judge holds that they should be dismissed due to the fact that Hayberg was not an intended beneficiary of the contract between the hospital, Robinson Memorial, and the medical insurer, the General Motors Plan, which was administrated by Anthem. This is where our analysis differs. Since these claims appear to be related to the statutory violation claim, they should be further evaluated to determine if Hayberg has any valid claims outside of the existence of the contract. Based on this, I see no reason to depart from my analysis as to these issues in my dissent in the prior appeal, which finds that summary judgment is proper on other grounds and that the underlying factual premise of this case does not support any of the remaining claims.

**{¶53}** As to the Fraud claim, the elements include, in part, "a representation or, where there is a duty to disclose, concealment of a fact, * * * made falsely * * * with the intent of misleading another into relying upon it." (Citation omitted.) *Cohen v. Lamko, Inc.*, 10 Ohio St.3d 167, 169, 462 N.E.2d 407 (1984). Hayberg claimed that Robinson Memorial had a duty to disclose certain facts to Nationwide in processing the claims for Hayberg's medical expenses, such as the facts that neither Hayberg nor Robinson

Memorial had a contractual right to payment under the Nationwide liability policy and that Anthem had paid those expenses at a discounted rate.

**{¶54}** Accepting these allegations as true, Hayberg has failed to make any argument that Robinson Memorial made false statements to her or concealed information from her that it was under a duty to disclose. Hayberg cannot raise a claim of Fraud based on what Robinson Memorial failed to disclose to Nationwide or Anthem. There is simply no evidence that Fraud was committed against Hayberg.

**{¶55}** Hayberg's Conversion and Unjust Enrichment claims are premised on Robinson Memorial reducing the amount of money directly available to her under the Nationwide policy by accepting Nationwide's payment of $13,861.45 for her medical expenses after those expenses had been paid by Anthem at the discounted rate of $11,295.39, which allowed Robinson to retain payment in excess of what it was owed.

**{¶56}** "[C]onversion is the wrongful exercise of dominion over property to the exclusion of the rights of the owner, or withholding it from his possession under a claim inconsistent with his rights." (Citation omitted). *Joyce v. Gen. Motors Corp.*, 49 Ohio St.3d 93, 96, 551 N.E.2d 172 (1990). Unjust Enrichment entails the "retention of [a] benefit by the defendant under circumstances where it would be unjust to do so without payment." (Citation omitted.) *Hambleton v. R.G. Barry Corp.*, 12 Ohio St.3d 179, 183, 465 N.E.2d 1298 (1984).

**{¶57}** These claims must fail because Robinson Memorial did nothing wrongful by accepting payment from Nationwide and reimbursing Anthem the money it had previously paid, as has been discussed above and by the majority. The actual cost of Hayberg's medical expenses was $13,861.45. This is the amount paid by Nationwide

17

on her behalf and with her acquiescence. While it might be financially advantageous for Hayberg to have Anthem be responsible for paying her medical expenses, financial advantage is not sufficient to constitute a violation of R.C. 1751.60 or the common law claims raised in the present case.

{¶58} I concur in the writing judge's analysis and reasoning for affirming summary judgment as to the claim related to the alleged violation of R.C. 1751.60, but concur in judgment only as to the remaining claims for the foregoing reasons.

_____

TIMOTHY P. CANNON, P.J., dissenting.

{¶59} I respectfully dissent from the opinion of the majority. I agree that, to the extent it may apply, we are governed by the direction of the Ohio Supreme Court in *King v. ProMedica Health Systems, Inc.*, 129 Ohio St.3d 596, 2011-Ohio-4200; however, I believe the facts of this case are clearly distinguishable. I cannot imagine the Supreme Court, in deciding *King*, envisioned that any medical provider might do what Robinson Memorial Hospital (the "Hospital") did in this case. Putting a stamp of approval on what the Hospital has done here would be an unjust and unwarranted result.

{¶60} Although the facts are simple, the analysis is not. Anita Hayberg was in a serious automobile accident and incurred medical bills, including a bill from the Hospital in the amount of $13,861.45. She is insured for those expenses through the General Motors Health Plan, which is administered by Anthem. Anthem had a contract with the Hospital, wherein the Hospital essentially agreed to accept 89% of charges billed as payment in full from Anthem patients. In accordance with this provider agreement,

18

Anthem paid $11,295.39 of Hayberg's bill to the Hospital; the bill was thus considered paid in full, with nothing more due from Hayberg.

{¶61} As a result of the accident, there was also a Nationwide Insurance liability policy available to Hayberg, through the negligent insured, with limits of up to $100,000. This entire limit was available to *Hayberg* in the event the value of her claim equaled or exceeded $100,000. Hayberg's health insurance contract with Anthem contained a typical subrogation provision: she was required to reimburse Anthem from the proceeds of the Nationwide coverage for any amount Anthem paid out for Hayberg's medical expenses that resulted from the negligence of Nationwide's insured.

{¶62} However, it is clear and admitted that Nationwide owed nothing to the Hospital. Further, it is clear that Hayberg owed nothing to the Hospital. There is no subrogation agreement between Hayberg and the Hospital; her liability to the Hospital is dictated only by the terms of her Anthem health coverage and by the provider agreement between Anthem and the Hospital. Anthem paid the bill, and the Hospital agreed to accept this as payment in full from Hayberg.

{¶63} After the Hospital found out there was potential liability coverage available to Hayberg through Nationwide's insured, the Hospital sent a bill to Nationwide *for the full amount* of Hayberg's bill—in spite of the fact that her bill had already been paid in full*.*

{¶64} At oral argument, counsel for the Hospital acknowledged that Nationwide did not owe the Hospital *anything*. However, counsel attempted to justify the Hospital sending the bill to Nationwide by stating Hayberg was required to pay back Anthem for the amount it advanced to the Hospital. This is a nonsensical and completely

19

disingenuous argument. First, the Hospital is not a party to the subrogation provision between Anthem and Hayberg. Second, the bill sent by the Hospital to Nationwide ($13,861.45) exceeded the amount of Hayberg's obligation to Anthem ($11,295.39).

{¶65} The flaw in the Hospital's entire approach to this situation is seen most clearly in the Hospital memorandum dated November 1, 2002, attached to Hayberg's opposition to the Hospital's motion for summary judgment. In this memorandum, the Hospital sets forth its policy with regard to patients who have been injured in an accident. It directs the Hospital administration to submit a bill to any Med Pay insurance of the patient and/or the insurance company for the other party who may have been at fault. It further states that when "both Medical Insurance and Auto Insurance are given, input the Auto as primary and the Medical as secondary." The Hospital has no authority to do this.

{¶66} The liability insurance company is not liable to the Hospital for anything; those funds are owed to the injured party. If the liability coverage is reduced, it has the *potential* of directly reducing the amount due to the injured party. In fairness, it has the *potential* of costing the injured party only in those cases where the value of the claim exceeds the liability coverage limits. Nevertheless, it was alleged *and proven* that, as a result of the Hospital billing Nationwide, there was a *direct cost* to Hayberg— Nationwide's payment to the Hospital directly reduced the amount that Hayberg was entitled to and would have otherwise received. It is this result that distinguishes these facts from those in *King.*

{¶67} Perhaps the most disturbing aspect of the Hospital's policy is found in paragraph 8 of the above-referenced memorandum, which states: "If the patient

20

refuses to cooperate, *make the account Self-Pay*, 998-03, and input 'Auto Accident' in the group field. Leave any medical insurance from a prior visit in the system as secondary." (Emphasis added.) The Hospital wants information from the tortfeasor's liability insurance carrier in order to bill it for the full amount of the injured party's bill, even if the patient has health insurance to cover her entire bill in full. The Hospital has set up a system that punishes the patient for refusing to provide this information (i.e., refusing "to cooperate"). The Hospital has no authority to do this, and the patient is under no obligation to provide this information. By refusing to bill the insured patient's health insurance carrier and, instead, billing the patient directly as "Self-Pay," the Hospital is essentially bludgeoning the patient into submission. There can be no more glaring example of a violation of R.C. 1751.60, and no more compelling evidence of the need for the protection the statute provides.

**{¶68}** To summarize, as a result of an automobile accident caused by another party's negligence, we have an injured party, whose car may have been significantly damaged, who has been hospitalized, and who has quite possibly missed work. The injured party—fully insured—now begins to receive hospital bills for the full amount of the hospital stay (or for the difference between the full amount and the amount the tortfeasor's liability coverage has paid), even though the health insurance carrier has paid these same bills, in full. This cannot be what the *King* Court had in mind.

### *KING* DISTINGUISHED

**{¶69}** The Supreme Court in *King*, 2011-Ohio-4200, stated that "R.C. 1751.60(A) applies only when a healthcare provider seeks payment from an insured." *Id.* at ¶2. The Court noted that King, the insured patient, did not allege the healthcare provider

21

sought compensation directly from her. It is unclear from the facts of *King* whether the medical coverage billed to the medical payments provider was a subrogated amount. It is also not clear whether the value of King's medical claim exceeded the available liability coverage. These facts are necessary to determine whether the billing in question violated R.C. 1751.60(A). If the medical coverage was not subrogated, billing the liability insurance company for that amount cost King nothing. Even if the medical coverage *was* subrogated, so long as the value of the claim was within the applicable liability coverage limits, billing the liability provider for the medical coverage would have cost King nothing.

**{¶70}** However, in the case sub judice, it is agreed by all that the value of Hayberg's claim exceeded the $100,000 limit of liability coverage. No one disputes that, as a result of this billing, the Hospital received $2,566.06 more than the contract rate it agreed to accept, and Hayberg received $2,566.06 less than she otherwise would have received. This is *exactly* what R.C. 1751.60(A) is intended to guard against.

**{¶71}** The *King* Court further stated: "Because King was not asked to make any payment for the services she received, appellants did not violate R.C. 1751.60(A)." *Id.* at ¶10. This analysis does not apply in this case. The Hospital sent a bill directly to Nationwide, even though all agree it *did not owe* the Hospital any money. Why Nationwide paid the bill without a release or permission from Hayberg, the only person to whom it was liable, remains one of the great mysteries of this case. However, even assuming the Hospital is tacitly permitted by *King* to send such a bill*,* it is necessary to know whether the value of the liability claim exceeds the limits of coverage in order to determine whether the billing violates R.C. 1751.60(A). In this case, the value of the

22

claim clearly did. Therefore, even though the bill was not sent to the injured party/patient, payment to the Hospital ca*me directly out of a fund that would otherwise have been paid to Hayberg*. Whether Hayberg is asked to make payment, or Hayberg is billed, or the liability carrier that owes money to Hayberg is billed, is a distinction without a difference. Although Hayberg did not receive a bill for the amount that exceeded her health insurance contract rate, the evidentiary material submitted clearly establishes that *she did pay it*.

{¶72} The amount of $13,861.45 was deducted *directly* from Hayberg's settlement proceeds. Therefore, the Hospital did, in effect, seek payment from Hayberg because she was obligated to reimburse Anthem only $11,295.39. This is the contract rate the Hospital should have accepted as payment in full, and did receive as payment in full prior to discovering the available liability coverage. Without question, the evidentiary material establishes Hayberg's settlement was $2,566.06 *less* than she otherwise would have received due to the Hospital billing Nationwide.

{¶73} The Hospital argues that the General Motors Health Plan is not a "health insuring corporation" as described in R.C. 1751.60. I do not agree. However, this sheds light on a more important threshold issue that has not been directly addressed in this case. I believe Hayberg should prevail without regard to that statute.

{¶74} The Hospital has set forth no theory of liability suggesting Nationwide was in any way liable to the Hospital. At the time the Hospital billed Nationwide, it had already been paid in full by Anthem, thereby discharging Hayberg from any further obligation. If Nationwide had not paid the bill, the Hospital would have no cause of action to collect the money. It could not allege that Hayberg owed the Hospital money:

23

after Anthem paid the bill in full, Hayberg no longer owed the Hospital anything. How then could the Hospital allege Nationwide owed it anything? As stated earlier, in response to the question at oral argument of why the Hospital would even send a bill to Nationwide, the response was that Hayberg owed subrogation money to Anthem. But Hayberg clearly only owed subrogation to Anthem in the amount of $11,295.39.

### *HAYBERG 1*

{¶75} In *Hayberg I*, 11th Dist. No. 2008-P-0010, 2008-Ohio-6180, I concurred in judgment only. The lead opinion included numerous conclusory statements concerning the Hospital's liability with respect to the contract and fraud claims. I agreed only that there were questions of fact with regard to those claims, but did not agree with the conclusions. Those causes of action are not precluded by R.C. 1751.60 and should, in fact, survive as the law of the case. The Supreme Court decision in *King* does not determine them.

{¶76} As the majority points out, the *King* Court emphasized that R.C. 1751.60(A) only refers to healthcare providers and health insurers. The statute does not contain any reference to automobile or other types of insurers. However, I do not believe it can be argued that *King* created a new cause of action for healthcare providers that would allow them to pursue liability insurance carriers in situations such as this. By its own admission, the Hospital solicited and received money from Nationwide to which Hayberg, not the Hospital, was entitled and was thus unjustly enriched. R.C. 1751.60(A) has no application with respect to this cause of action. At a minimum, there is a question of fact as to whether Hayberg should be entitled to recover under this theory as set forth in her complaint.

**{¶77}** In addition, with respect to Hayberg's third party beneficiary theory, the majority concludes that Hayberg is an "incidental" beneficiary to the contract between Anthem and the Hospital. The majority states that by billing Nationwide, the Hospital "did not deprive appellant of any funds belonging to her[.]" This analysis suggests the Hospital had as much right to the Nationwide liability proceeds as Hayberg. However, the exact opposite is true. Nationwide would only *plausibly* owe the Hospital if Hayberg still owed something to the Hospital. *She did not owe the Hospital any money*. Because they had no legal right to the funds, there is at least a question of fact whether the Hospital did, in fact, deprive Hayberg of funds belonging to her.

**{¶78}** With regard to the fraud claim, there is a plethora of evidence that, if believed by a jury, could support a finding of fraud. The Hospital's billing practice alone could support such a finding. The evidence appears undisputed that the Hospital billed Anthem and was paid in full under the provider agreement. Neither Anthem nor Hayberg owed the Hospital anything further. Thereafter, the Hospital discovered Hayberg was making a liability claim, so it obtained the information regarding this claim and billed Nationwide. As previously explained, this was done even though, as admitted by the Hospital, there is no theory under which Nationwide was liable to the Hospital. Nationwide paid the full amount, as opposed to the subrogated amount, of the bill. After being paid twice for the same services, the Hospital tells no one: neither Hayberg nor Anthem. Hayberg thereafter files suit and discovers Nationwide paid the full amount of the bill to the Hospital. The evidence appears unrefuted that the Hospital received overpayment on December 5, 2003. The overpayment generated an entry on a December 27, 2003 "credit balance report" which shows amounts overpaid by

25

Hayberg/Anthem. This report also apparently reflected overpayments on the accounts of many other patients. This report contained, again apparently without refute, 537 pages of credit balance information on patients. On January 31, 2004, the Hospital simply zeroed out Hayberg's account without notifying anyone of the overpayment. On October 3, 2006, Hayberg filed her first lawsuit. The Hospital did not begin to investigate the overpayment until prompted to do so on December 15, 2006, more than three years after it had been overpaid. There is a jury question regarding the intent and magnitude of this conduct, and whether it constituted fraud.

**{¶79}** Even if the Hospital provided some theory under which Nationwide would be liable to it, there is still a very practical need for caution in allowing medical providers to bill direct to the liability carrier: the value of the claim is often not known until many months or years after the expenses are incurred. When it is not yet known whether the value of the medical claim exceeds the liability coverage, medical providers should not be permitted to receive more than the contract rate they have agreed to accept and must follow the dictates of R.C. 1751.60. Additionally, permitting medical providers to directly bill liability carriers raises the issue, for trial purposes, of the reasonable value of services, and what values should be considered for purposes of recovery. *See Robinson v. Bates*, 112 Ohio St.3d 17, 2006-Ohio-6362, and amended R.C. 2315.20.

**{¶80}** Finally, I would address the merits of Hayberg's request for an order compelling discovery, which was considered moot by the majority in light of its determination of the first assignment of error.

**{¶81}** For all of the foregoing reasons, I respectfully dissent.